HEARD APRIL TERM, 1872.

## PRINGLE *vs.* DORSEY.

P. being seized in fee of a lot in Columbia, endorsed upon his title deed the following words and figures : " Received from P., in trust for the congregation of Christ Church, Columbia, November 18th, 1850." This endorsement was signed by " C., for the vestry of Christ Church, Columbia," and the deed was delivered to him by P. Christ Church, Columbia, was an unincorporated religious association. They erected a church edifice upon the lot, and worshipped in it as a congregation until 1865, when it was destroyed by fire. The association was then broken up, and the congregation ceased to exist: *Held*, that when the congregation ceased to exist, the trust resulted to P., and that he could sell and make good title to the lot.

When a voluntary trust, for a specific charitable purpose, fails for a want of a *cestui que trust*, the trust, whether created by deed or devise, results to the donor.

The doctrine of *cy pres*, as applied in England, to charitable trusts, has never been recognized as law in this State.

BEFORE MELTON, J., AT CHAMBERS, COLUMBIA, Nov., 1871.

Action by James M. Pringle, plaintiff, against Edward R. Dorsey, Francis H. Gordon, Thomas S. Davant, and Thomas H. Clarkson, defendants, for specific performance.

The case is fully stated in the carefully prepared brief of appellants' counsel, which is as follows :

I. The complaint states : 1. That the plaintiff is the owner of the lot on which Christ Church stood, in Columbia, as described. 2. That the defendants, on 1st September, 1871, agreed, in writing, to purchase the same for $2,400, from plaintiff, and paid $200 on the contract, balance to be paid 4th October, 1871, plaintiff agreeing at that day to give good and sufficient titles. 3. That plaintiff

on that day tendered titles, which defendants refused. 4. The plaintiff prays a specific performance.

II. Joint answer of the defendants, Dorsey, Gordon and Durant, states: 1. They admit all of the facts of the complaint. 2. They admit the tender of title by plaintiff, but allege that, upon the title deed of the executors of Latta, (from whom plaintiff bought,) the defendants found these words endorsed thereon, in the handwriting of the plaintiff himself: "Received from the Rev. J. M. Pringle, in trust for the congregation of Christ Church, Columbia, November 18th, 1858," signed "Thomas B. Clarkson, for Vestry of Christ Church, Columbia," which deed, so endorsed, was delivered by plaintiff to said Thomas B. Clarkson. 3. That Christ Church was never incorporated, but the congregation, acting upon the delivery of the deed to Thomas B. Clarkson, for their use, erected upon the lot a large and valuable church edifice, in which they worshipped until 1865, (when it was destroyed by fire,) and the plaintiff stood by and consented to the erection of the building upon the lot. 4. That, under the circumstances, defendants are advised that the trust still attaches to the property within the hands of plaintiff, or in the hands of Clarkson, the trustee, and they cannot safely pay, the endorsement being on the title deed; in no event could they claim as purchasers without notice, should their title be called in question. 5. They suggest to the Court that Thomas B. Clarkson should be made a party. 6. They submit themselves to the judgment of the Court, and are willing to comply and accept title if a good marketable title can be made.

III. Upon motion before Judge Melton, Thomas B. Clarkson was ordered to be made a party; and it was further ordered that the plaintiff have leave to reply to the new matter set up in defendant's answer.

IV. The answer of Thomas B. Clarkson, (upon his being made a party,) states: 1. That he was a member of the congregation on 18th November, 1858, and one of the vestry. That the property was purchased by plaintiff from the executors of Latta, in whole or in part, with his own money, and he took conveyance in his own name. 2. That at the time, plaintiff was pastor of the church. 3. That no legal title could be made to the church—it was never incorporated. That on the 18th November, 1858, plaintiff delivered to the defendant the title of Latta to him, with the words, in plaintiff's own handwriting, endorsed, "received from the Rev. J. M. Pringle, in trust for the con-

gregation of Christ Church, Columbia," which this defendant signed
"Thomas B. Clarkson, for Vestry of Christ Church, Columbia, No-
vember 18, 1858."    4. This defendant does not know whether
plaintiff intended the purchase money to be refunded to him before
he executed legal titles, should the church become incorporated, but
the congregation did erect, with plaintiff's consent and approval, on
the lot, a valuable house of worship, which they occupied until it
was destroyed in 1865, and the plaintiff continued as pastor.  5. That
in 1865, after the destruction of the church, plaintiff applied to the
defendant for the endorsed deed, which this defendant surrendered,
and it has not since been in his possession.  6. That after the de-
struction of the church, J. T. Sims obtained a decree against the
vestry, and to save them from personal liability, the bricks upon the
lot were surrendered by plaintiff to the vestry to pay the said debt,
plaintiff holding the lot to be his individual property, and not liable
for any debt contracted by the vestry in behalf of the congregation
of Christ Church.  7. The defendant had no other interest in the
property.

V. Reply of plaintiff to the answer of Dorsey, Gordon and Du-
rant, by direction of the Court:  1. Plaintiff admits the delivery of
the original title deed to Clarkson, and the endorsement of the words
thereon.  2. He did purchase the lot for the use of the congregation
of Christ Church with his own funds almost entirely, and some
funds contributed by friends.  3. He proposed to convey to Christ
Church, when it should have a legal existence, and there being no
incorporation, he delivered the original deed to Clarkson; and to
show his good faith in the transaction, he endorsed the words on the
deed; and Clarkson, representing what was intended to become the
legal government of the church, signed his name to the endorse-
ment, stating the purpose for which the deed was delivered.  4. He
admits the erection of the church, and its destruction in 1865.  5. He
avers that the church never existed as a corporate body, and never
could hold real estate.  6. That the congregation has passed away,
and does not exist as an association of individuals, acting without
charter.  7. That the object of the plaintiff has failed.  8. That
there are no debts against the body of which Clarkson was chair-
man.  9. That the property claimed by plaintiff has never passed
from him; that his intention to convey was never carried out, and
there being no person or persons who can compel a deed by virtue of
the endorsement, the plaintiff claims that the title still is in him,
and is a good and sufficient title.

VI. Upon motion, it was ordered that plaintiff have leave to reply to the new matter stated in the answer of the defendant, Clarkson.

VII. The reply of plaintiff to the answer of Thomas B. Clarkson : 1. Admits the allegations of 1st, 2d, 3d and 4th paragraphs of defendant's answer. 2. In the 5th paragraph plaintiff says that it was his intention to convey the said lot when the church should be incorporated, and that it should be used for the worship of God. 3. That he approved the building of the church. 4. He admits that when the purposes for which the church was built had failed, he demanded and received the title deed from Clarkson. 5. He admits that, a decree having been obtained against the vestry in their personal capacity, he cheerfully surrendered the bricks on the lot, as an easy mode of saving the members of the vestry from personal liability.

The finding of the Court, upon the facts, was as follows :

VIII. This case came on to be heard at Chambers, by consent of all the parties. 1. The hearing was had on the complaint, and the answers of the three first named defendants. The plaintiff replied to the answer and obtained leave to make Thomas B. Clarkson a party defendant, who came in and answered, setting up new matter, to which the plaintiff was permitted to reply. 2. It appears from the pleadings in the case, that James M. Pringle, the plaintiff, with funds of his own, purchased and paid for the land agreed to be purchased by the three first named defendants, against whom the complaint for specific performance has been filed. 3. It appears further, that James M. Pringle, when he purchased the land in question, took a deed in fee, and, subsequently, delivered the said deed to Thomas B. Clarkson, the defendant last named in the complaint, and in his own hand writing endorsed on the said deed the declaration of trust, which was signed by the said Thomas B. Clarkson. 4. That it was the intention of the plaintiff to make a title of the property to the congregation of Christ Church at such time as the congregation should, by incorporation, be enabled to hold real estate. 5. That the said congregation never was incorporated, and no title ever executed to the land in question. 6. That the congregation did erect a church edifice on the lot, but this building has been destroyed, and what remains of it, to wit, the bricks, have been delivered up and sold to pay the debts of the congregation, so that now the lot is in the condition it was before the building was

put there. 7. That the congregation of Christ Church no longer exists.

The finding upon the law was as follows:

IX. There is nothing in the purpose of the plaintiff, as declared by him at the time he delivered the deed to the defendant, Thomas B. Clarkson, or subsequently, which can attach any such trust, for the benefit of the congregation of Christ Church, as may prevent the plaintiff from executing a good and sufficient title to the three first named defendants.

The judgment was as follows:

X. 1. That the agreement mentioned in the complaint, and proven in this case, be specifically performed, and that the plaintiff execute and deliver titles to the defendants, Edward R. Dorsey, Francis H. Gordon and Thomas S. Davant, in fee, (premises described.) 2. That if the defendants, Edward R. Dorsey, Frances H. Gordon and Thomas S. Davant, refuse to receive said deed, the plaintiff file the same with the Clerk of this Court, and that upon such delivery, or filing of said conveyance, the defendants, last above named pay to the plaintiff. or his attorney, the residue of the purchase money named in the contract set forth in the complaint.

The defendants, Dorsey, Gordon and Davant, excepted to the conclusion of law by the Judge, and appealed to this Court:

1. Because the words indorsed upon the deed did create a trust, bearing both upon Pringle and Clarkson, and affecting the land in the hands of either.

2. Because the erection of the building, with Pringle's consent, was a further dedication of it to religious purposes by him.

3. Because the gift, by Pringle, was intended as a charity, which may still be carried out.

4. Because the destruction of the building cannot alter the trusts which follow the land.

*Pope & Haskell*, for appellants.

*Bachman & Waties*, contra.

The words endorsed on the deed, " Received from the Rev. J. M. Pringle, in trust for the congregation of Christ Church," indicate a gift to a special, not a general charity.—Story Eq., §§ 1182, 1191; *Attorney General* vs. *Bishop of Oxford*, 1 Bro. Ch. R., 379; *Attorney General* vs. *Goulding*, 2 Bro. Ch. R., 429; *Corbyn* vs. *French*,

4 Ves., 419, 433; *De Garcin* vs. *French*, 4 Ves., 433; note; Jeremy Eq., 243 to 245.

The words of the endorsement are not ambiguous, and if they were, the Court would ascertain the intention of the donor and carry it into effect.—Story Eq., § 1183.

The purpose of the gift having failed by the extinction of the society, the property reverts to the donor.—*Elliott* vs. *Morris*, Harp. Eq., 231; *Bishop of Cloyne* vs. *Young*, 2 Ves., 91.

The doctrine of *cy. pres.* does not prevail in South Carolina. *Attorney General* vs. *Jolly*, 2 Strob. Eq, 379; and particularly on page 395.

Aug. 15, 1872. The opinion of the Court was delivered by

MOSES, C. J. The intention of the donor is to determine the character of the trust created by the receipt of Clarkson, November 18, 1858, endorsed on the deed of the executor of Latta, conveying to the plaintiff the premises referred to in the bill. We are not satisfied that it is to be ascertained from the declaration of the donor in his complaint in regard to it, to which the Circuit Judge seems to have given weight, nor even that the nature of the trust apparent on the face of the instrument, can be modified or controlled by any evidence on the part of the donor, as to what he proposed by the creation of it, save in the case of alleged mistake or fraud. The words are not of doubtful import; "the trust was for the congregation of Christ Church, Columbia," and it was accepted by and "for the Vestry of Christ Church, Columbia." It is not to be denied, as is contended by the appellants, that the congregation might have compelled a declaration of the trust in their behalf, or even required that it should be executed by a title, while they had an existence as such congregation. The vestry, of which Clarkson was one, must have represented a body from whom they derived their official authority, and they who constituted the body at the date of the receipt, were the congregation of Christ Church, Columbia, subject to be increased by members of their own acceptance. For this body, whoever constituted it, he held, and if they now exist, though diminished in numbers by natural causes, they may demand of Clarkson all their legal and equitable rights under the trust.

"Where the donor's mind applies to a particular object, and the same is lawful, a general intent cannot be inferred."—Jeremy Eq., 245. The expression of the one object which is the subject of the

charity, must exclude all others, if that is clearly made manifest by the words which he has chosen to denote it.

The subject is so fully treated by Mr. Story in his Equity Juris-prudence, that it is but necessary to refer to his conclusions from the authorities which he has collected. In Section 1182, he says: "All these doctrines proceed upon the same grounds, that it is the duty of the Court to effectuate the general intention of the testator. And accordingly the application of them ceases, whenever such general intention is not to be found. If, therefore, it is clearly seen that the testator had but one particular object in his mind, as for example, to build a church at W., and that purpose cannot be an-swered, the next of kin will take, there being in such a case, no general charitable intention." As it is the intention which is to govern and regulate the charity, the same rule must apply, whether it is created by deed or devise.

That the donor intended the proposed trust for the benefit of the congregation of Christ Church, Columbia, admits of no question. If it had been incorporated, and thus accorded an existence during the continuance of its charter, no matter by what name, if the cor-poration consisted of those who were the expressed objects of his bounty, there would have been an object upon which the trust could have attached, and by successive renewals its existence would have been perpetuated. According to the fact, as found by the Circuit Judge, the "congregation of Christ Church no longer exists." If there is no such congregation, who is there to claim any deeds or even any benefit by virtue of the endorsement on the title, or to demand its execution by a decree of the Court? The donor had in his mind the congregation of the church, recognized as such, repre-sented by the vestry, and when that is dissolved the members dis-persed and scattered, is the title to this plaintiff never to revert, be-cause, perchance, at some future time, there may arise another such congregation succeeding to their rights? Is it the mere name that is to confer on others who may assume to be the congregation, the right to have this trust declared in their favor? If so, persons, though differing with the donor in his particular religious creed, under the name of "Christ Church, Columbia,,' might demand the enjoyment of the trust, which it is manifest he intended for the in-dividuals who composed the congregation to which he referred, and who, by connected association, if it had not been dissolved by con-sequences unforeseen and disastrous, might yet have composed it.

The building of the church by the congregation, with the assent

of the plaintiff, cannot be set up as an independent act through which title enured to it, and if it did, who is there now to claim it? It must be referred to the trust committed to Clarkson, and when that failed, all rights which depended on it for support fell with it.

The doctrine of *cy pres*, which it is sought to apply to this case, is inconsistent with our institutions, and has never prevailed in this State. It is an arbitrary rule introduced into the common law from the civil law, clothing the Judges with a discretion regulated by no rules or principles, but depending entirely on the exercise of their will. We would hesitate long before we endorsed it, even if, by the force of authority, we were compelled to adopt it. We are, however, freed from the necessity. In *Beckman* vs. *Bonsor*, (23 N. Y., 9 Smith, 298, affg. S. C., Barb., 260,) it was held " that the *cy pres*, which constitutes the peculiar feature of the English system, and is exerted in determining gifts to charity, where the donor has failed to define them, and forming schemes of approximation near to or remote from the donor's true design, is unsuited to our institutions, and has no existence in the jurisdiction of this State on this subject." Such is the rule in the State of New York.

In *Atty. General* vs. *Jolly*, (2 Strob. Eq., 395,) Chancellor Johnston, delivering the opinion of our Appeal Court, says: " Then the question is whether, if the legacy had been to this church, by name, the government of the denomination to which it is attached is such as to prevent its receiving the benefits intended. If that were the case, it by no means follows that the Court would be bound to divert the legacy to other kindred objects. That is a doctrine which this Court would be very reluctant to adopt without a strong necessity, and very mature reflection. It has never, to our knowledge, been adopted or recognized in our Courts, and we are persuaded that it ought not to be adopted."

The trust having failed for want of persons capable of claiming its execution, on well recognized principles the property reverts to the donor.

The order affirming the judgment below, and dismissing the motion, has been already filed.

*Willard* A. J., and *Wright*, A. J., concurred.